[Cite as *Bradley v. Bradley*, 2021-Ohio-2514.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

GWEN M. BRADLEY,                          :

    Plaintiff-Appellee,              :

                                         No. 109792

    v.                               :

CLINT BRADLEY, III,                       :

    Defendant-Appellant.             :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 22, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-16-362721

---

### *Appearances:*

Rosenthal|Thurman|Lane, L.L.C., and Scott S. Rosenthal,
*for appellee.*

Clint Bradley III, *pro se.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Clint Bradley III ("Husband") brings this appeal challenging the trial court's judgment entry of divorce. Husband argues that the trial court erred in failing to promptly rule on motions or denying motions as moot, erred in unequally allocating property, erred in admitting evidence and testimony at

trial, and erred in making various factual determinations based on the evidence and testimony presented. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶ 2} Husband and plaintiff-appellee Gwen Bradley ("Wife") married in July 1994. They had two children during their marriage: S.B., born in March 1998, and C.B., born in October 2002.

{¶ 3} On June 23, 2016, Wife filed a complaint for divorce. Mutual restraining orders were issued against both parties on June 23, 2016. Husband filed an answer and counterclaim on July 1, 2016.

{¶ 4} On September 22, 2016, the trial court issued a temporary support order under which the parties were ordered to split expenses related to the marital home. The parties were not ordered to pay child support to one another.

{¶ 5} The matter proceeded to trial in October 2017. Hearings were held on October 11, 12, and 13, 2017. Several witnesses testified at trial, including Wife, Husband, the minor child's (C.B.) guardian ad litem ("GAL"), Wife's attorney, and Dr. Steven Neuhaus.

{¶ 6} The GAL submitted a report and recommendation. Dr. Neuhaus also submitted a report.

{¶ 7} In December 2017, Wife requested that the matter be reopened for further testimony. In her motion to reopen, Wife asserted that she hired an accountant and discovered, after trial, that she was jointly liable with appellant for

federal income taxes exceeding $600,000. Husband opposed Wife's motion to reopen, alleging that Wife was aware of the tax liability based on her involvement in compiling relevant tax information and signing tax returns between 1994 and 2015.

{¶ 8} Additional hearings were held on April 30, 2018, and July 10, 2018. The scope of these additional hearings was expressly limited to tax liability issues.

{¶ 9} The magistrate's decision was issued on June 11, 2019. Therein, the magistrate found that Wife "fully and completely disclosed all marital property, separate property, and any other assets, debts, income and expenses subject to the jurisdiction of this Court." The magistrate found that Husband did the exact opposite: "[Husband] employed every possible measure imaginable to both conceal his financial information from [Wife] and the Court, and confuse the financial issues present in this case."

{¶ 10} Based on Husband's attempts to conceal his financial information from the trial court, the magistrate had to calculate Husband's income by examining bank records and deposits made into bank accounts.

{¶ 11} The magistrate recommended that the parental rights and responsibilities be primarily allocated to Wife, and that Wife be designated as the residential parent and legal custodian of the minor child (C.B.). The magistrate's decision also addressed the issues of (1) division of property and debts, (2) spousal support, (3) allocation of parental rights and responsibilities, including parenting time, (4) child support, (5) attorney fees, (6) GAL fees, and (7) outstanding motions.

The relevant aspects of the magistrate's decision will be addressed in the analysis of Husband's assignments of error.

{¶ 12} Husband filed objections to the magistrate's decision on June 25, 2019. He supplemented his objections on November 6, 2019. Husband raised the following 14 objections to the magistrate's decision:

1. The magistrate erred in determining [Husband's] income.

2. The magistrate erred in calculating child support.

3. The magistrate erred in denying [Husband's] motion to show cause (parenting time) filed on June 6, 2018.

4. The magistrate erred in denying [Husband's] motion to show cause (temporary support) filed October 10, 2017.

5. The magistrate erred in denying [Husband's] motion to show cause (temporary support) filed January 10, 2018.

6. The magistrate erred in denying [Husband's] motion to show cause (temporary support) filed May 5, 2018.

7. The magistrate erred in determining parenting time.

8. The magistrate erred in determining that no arrearage for temporary support existed as of July 10, 2018 (the last day of trial).

9. The magistrate erred in determining that [Husband] has the ability to post a cash bond of $5,000.

10. The magistrate erred in failing to address the Bradley Group and to consider, in determining [Wife's] total income, whether [Wife] received additional income from the Bradley Group.

11. The magistrate erred in determining that [Wife] should be awarded $10,000.00 in attorney fees.

12. The magistrate erred in failing to address the joint tax liabilities of the parties.

13. The magistrate erred in failing to address outstanding student loan debt in [Husband's] name.

14. The magistrate erred in determining that [Husband] was solely responsible for the outstanding debt associated with the GMC Acadia and 2013 Jeep.

{¶ 13} Wife filed a brief in opposition to Husband's objections on January 2, 2020. On April 16, 2020, the trial court issued a judgment entry ruling on Husband's objections to the magistrate's decision. The trial court sustained Husband's thirteenth objection to the magistrate's decision, in which he argued that the magistrate erred in failing to address the outstanding student loan debt existing in Husband's name. Nevertheless, the trial court concluded that it was equitable that Husband bear responsibility for all student loan debt in his name, and that he indemnify and hold Wife harmless from such debts. The trial court overruled Husband's remaining objections to the magistrate's decision.

{¶ 14} On May 15, 2020, Husband filed an appeal challenging the trial court's April 16, 2020 judgment. (*Bradley v. Bradley*, 8th Dist. Cuyahoga No. 109728.) On June 4, 2020, this court dismissed Husband's appeal for lack of a final appealable order. In dismissing the appeal, this court explained that the trial court only ruled on Husband's objections to the magistrate's decision and had not adopted or modified the magistrate's decision.

{¶ 15} On June 17, 2020, the trial court issued its judgment entry of divorce. Therein, the trial court adopted the magistrate's June 11, 2019 decision as modified in the trial court's judgment entry of divorce. The trial court's judgment entry of

divorce also addressed and ruled upon Husband's objections to the magistrate's decision.

{¶ 16} As it did in its April 16, 2020 judgment entry ruling on Husband's objections to the magistrate's decision, the trial court sustained Husband's thirteenth objection, but concluded that "it is equitable that [Husband] bear responsibility for all student loan debt in his name, and that he indemnify and hold [Wife] harmless for such debts." The trial court overruled Husband's remaining objections, including Husband's objection that the magistrate erred in determining Husband's income. The trial court concluded that the magistrate's determination that Husband's income was $129,550.62, based on deposits into Husband's personal bank account that exceeded Wife's documented income, was supported by the evidence.

{¶ 17} Like the magistrate's decision, the trial court's judgment entry of divorce addressed the issues of (1) division of property and debts, (2) spousal support, (3) allocation of parental rights and responsibilities, including parenting time, (4) child support, (5) attorney fees, (6) GAL fees, and (7) outstanding motions. The relevant aspects of the trial court's decision will be addressed in the analysis of Husband's assignments of error.

{¶ 18} Husband filed the instant appeal, 8th Dist. Cuyahoga No. 109792, on June 29, 2020. The trial court's June 17, 2020 "judgment entry of divorce" is the only judgment entry identified in Husband's notice of appeal.

{¶ 19} In this appeal, Husband assigns the following 44 errors for review.

1. The trial court erred in establishing [Husband's] income.

2. The trial court erred by not considering all evidence submitted during relevant hearings in this case when rendering its final decision.

3. The trial court erred in limiting witness examinations.

4. The trial court erred in establishing [Wife's] income.

5. The trial court erred in establishing grounds for divorce.

6. The trial court erred in establishing that no support arrearage existed as of July 10, 2018.

7. The trial court erred in its allocation of marital debt.

8. The trial court erred in its finding that [Husband] concealed financial information from [Wife] and the court and attempted to confuse the financial issues present in this case.

9. The trial court erred in finding that denial of parenting time was not applicable in determining its allocation of parental rights and responsibilities.

10. The trial court erred in finding that no probative evidence was presented to prove that either parent has ever denied the other any parenting time.

11. The trial court erred in finding [Husband] did not provide any credible evidence of his true and accurate income for the years 2016 and 2017.

12. The trial court erred in determining that no evidence of child support arrearage was presented at trial.

13. The trial court erred in calculating child support.

14. The trial court erred in awarding attorney fees.

15. The trial court erred in its allocation of GAL fees.

16. The trial court erred in its determination that [Husband] should bear the full cost of credit card in [Wife's] name that she had prior to marriage.

17. The trial court erred in allocating marital vehicles.

18. The trial court erred in determining that [Wife] is not responsible for student loans taken out in [Husband's] name during the marriage.

19. The trial court erred in determination of property division.

20. The trial court erred in determination of spousal support.

21. The trial court erred in determining combined income.

22. The trial court erred in denying [Husband's] motion to compel, filed July 6, 2017.

23. The trial court erred in denying [Husband's] motion to compel (motion no. 411306).

24. The trial court erred in denying [Husband's] motion to compel discovery (404007).

25. The trial court erred in granting [Wife's] motion to compel (397457).

26. The trial court erred in denying [Husband's] motion to show cause without a hearing (405073).

27. The trial court erred in denying [Husband's] motion to show cause (407695).

28. The trial court erred in denying [Husband's] motion to show cause (408194).

29. The trial court erred in denying [Husband's] motion to show cause (411707).

30. The trial court erred in denying [Husband's] motion to show cause (411707).

31. The trial court erred in denying [Husband's] motion to show cause non-compliance with mutual restraining order without hearing (402310).

32. The trial court erred in granting hearing on [Wife's] motion to show cause (393175).

33. The trial court erred in denying [Husband's] motion for shared parenting (408198).

34. The trial court erred in denying [Husband's] motion for immediate parenting time (409451).

35. The trial court erred in granting [Wife's] motion for reconsideration, filed December 3, 2019.

36. The trial court erred in granting GAL's motion to quash subpoena (414397).

37. The trial court erred in granting [Wife's] motion to limit testimony (408921).

38. The trial court erred in granting [Wife's] motion for further testimony (406880).

39. The trial court erred in denying [Husband's] motion for a continuance (filed October 11, 2017).

40. The trial court erred in denying [Husband's] motion for a temporary restraining order ("TRO") preventing [Wife's] return to the marital residence (filed May 30, 2017).

41. The trial court erred in denying [Husband's] motion for a TRO (filed May 17, 2017).

42. The trial court erred in denying [Husband's] motion for a TRO and sanctions, filed January 4, 2019.

43. The trial court erred in allowing [Wife] to present evidence.

44. The trial court erred in denying [Husband's] motion to appoint a receiver.

{¶ 20} Husband's assignments of error will be addressed out of order for ease of discussion.

## II. Law and Analysis

## A. Preliminary Matters

### 1. Pro Se Litigants

{¶ 21} There are a number of preliminary matters we must address before reviewing Husband's assignments of error. Initially, we acknowledge that Husband acted pro se during trial below and is acting pro se in the instant appeal. This court has previously recognized,

> a pro se litigant may face certain difficulties when choosing to represent oneself. Although a pro se litigant may be afforded reasonable latitude, there are limits to a court's leniency. *Henderson v. Henderson*, 11th Dist. Geauga No. 2012-G-3118, 2013-Ohio-2820, ¶ 22. Pro se litigants are presumed to have knowledge of the law and legal procedures, and are held to the same standard as litigants who are represented by counsel. *In re Application of Black Fork Wind Energy, L.L.C.*, 138 Ohio St.3d 43, 2013-Ohio-5478, 3 N.E.3d 173, ¶ 22.

*Saeed v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 104617, 2017-Ohio-935, ¶ 7.

{¶ 22} Husband was presumed to have knowledge of the law and legal procedures, including the procedures for challenging the magistrate's decision pursuant to Civ.R. 53. In this appeal, Husband is presumed to have knowledge of the law and appellate procedure, as set forth in App.R. 12 and 16, regarding his burden of demonstrating error on appeal and the requirements for his appellate brief.

### 2. App.R. 12 and 16

{¶ 23} Pursuant to App.R. 12(A), this court is instructed to "[d]etermine the appeal on its merits on the assignments of error set forth in the briefs under App.R.

16[.]" App.R. 12(A) further provides that "errors not specifically pointed out in the record and separately argued by brief may be disregarded" by the reviewing court. *N. Coast Cookies v. Sweet Temptations*, 16 Ohio App.3d 342, 343, 476 N.E.2d 388 (8th Dist.1984); *Martin v. Cuyahoga Cty. Prosecutor*, 8th Dist. Cuyahoga No. 102628, 2015-Ohio-4589, ¶ 10. Accordingly, an appellant's assignments of error should designate specific rulings that the appellant challenges on appeal. If the appellant fails to comply with App.R. 12, the appeal may be dismissed.

{¶ 24} "The appellant bears the burden of demonstrating error on appeal *by reference to the record of the proceedings below.*" (Emphasis added.) *Davis v. Wesolowski*, 2020-Ohio-677, 146 N.E.3d 633, ¶ 29 (8th Dist.), citing *Stancik v. Hersch*, 8th Dist. Cuyahoga No. 97501, 2012-Ohio-1955. App.R. 16(A)(7) provides that the appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies. The argument may be preceded by a summary."

{¶ 25} In the instant matter, several of Husband's assignments of error are procedurally defective. In these defective assignments of error, Husband fails to provide arguments, fails to separately argue each assignment of error, fails to designate specific rulings he is challenging, fails to cite to the record of the trial court's proceedings, or fails to cite to supporting authorities. Based on Husband's failure to comply with App.R. 12 and 16, this court may disregard the defective

assignments of error. *See Cleveland v. Taylor*, 8th Dist. Cuyahoga No. 109371, 2021-Ohio-584, ¶ 87, citing *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 55; *Wells Fargo Bank, N.A. v. Collins*, 8th Dist. Cuyahoga No. 109555, 2021-Ohio-508, ¶ 29; *State v. Thompson*, 8th Dist. Cuyahoga No. 109253, 2021-Ohio-376, ¶ 91; *Wiltz v. Cleveland Clinic*, 8th Dist. Cuyahoga Nos. 109147 and 109483, 2021-Ohio-62, ¶ 18.

{¶ 26} After reviewing the record, we find that Husband's 2d, 10th, 12th, 16th, 19th, 23d, 24th, 25th, 27th, 28th, 29th, 30th, 31st, 32d, 34th, 38th, and 43d assignments of error are procedurally defective based on Husband's failure to comply with App.R. 12, App.R. 16, or both rules. Rather than summarily overruling these defective assignments of error, however, we address the assignments of error below.

### 3. Civ.R. 53

{¶ 27} In this appeal, Wife argues that several of Husband's assignments of error — assignments of error Nos. 2, 3, 5, 7, 8, 10, 11, 12, 15, 16, 19-25, 28, and 30-44 — are not properly before this court. Specifically, Wife contends that Husband waived these assignments of error by failing to raise the issues or arguments in his objections to the magistrate's decision.

{¶ 28} Civ.R. 53 governs proceedings before a magistrate and the trial court's duties in accepting or rejecting a magistrate's rulings. Civ.R. 53(D)(3)(b)(i) provides, in relevant part, "[a] party may file written objections to a magistrate's decision within fourteen days of the filing of the decision * * *." The party's

objections must be specific and state with particularity the grounds of objection. Civ.R. 53(D)(3)(b)(ii). The party who objects to the magistrate's factual findings has the duty to provide a transcript of the evidence relevant to the findings to the trial court, or an affidavit of that evidence. Civ.R. 53(D)(3)(b)(iii).

{¶ 29} "Pursuant to Civ.R. 53(D)(3)(b)(iv), *except for a claim of plain error, a party that fails to object to the magistrate's decision may not assign as error on appeal the trial court's adoption of any of the magistrate's factual findings or legal conclusions.*" (Emphasis added.) *Petrovich v. Auto Repair, Inc.*, 8th Dist. Cuyahoga No. 105216, 2017-Ohio-8731, ¶ 8; *State ex rel. Booher v. Honda of Am. Mfg., Inc.*, 88 Ohio St.3d 52, 53-54, 723 N.E.2d 571 (2000); *see also Dinardo v. Dinardo*, 11th Dist. Lake No. 2016-L-111, 2017-Ohio-4379, ¶ 18, citing *Foos v. Foos*, 6th Dist. Wood No. WD-08-049, 2009-Ohio-3398, ¶ 19, and Civ.R. 53(D)(3)(b)(iv) (finding that appellant waived his first and second assignments of error except for a claim of plain error because he failed to object to the magistrate's decision on the bases set forth in his assignments of error).

{¶ 30} In this appeal, Husband is challenging the trial court's decision *adopting* the magistrate's decision. Accordingly, the plain error rule applies. *See Miller v. Miller*, 8th Dist. Cuyahoga No. 109125, 2020-Ohio-5262, ¶ 5, citing *State ex rel. Neguse v. McIntosh*, 161 Ohio St.3d 125, 2020-Ohio-3533, 161 N.E.3d 571, ¶ 9 (the plain error rule does not apply when an appellant challenges the trial court's decision *modifying* the magistrate's decision).

{¶ 31} The Ohio Supreme Court has instructed reviewing courts to "proceed with the utmost caution" when applying the plain error doctrine in civil matters. *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997). "The [plain error] doctrine is limited to those 'extremely rare cases' in which 'exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a materially adverse effect on the character of, and public confidence in, judicial proceedings.'" *Huntington Natl. Bank v. Blount*, 8th Dist. Cuyahoga No. 98514, 2013-Ohio-3128, ¶ 12, quoting *Goldfuss* at *id*; *see also Hackett v. Hackett*, 5th Dist. Delaware No. 13CAF010002, 2013-Ohio-4684, ¶ 12, citing *Goldfuss* at syllabus (the plain error doctrine is not favored).

{¶ 32} After reviewing the record, we find that Husband did not waive his 7th, 10th, 11th, 12th, 21st, 26th, 27th, 29th, and 30th assignments of error. Assignment of error No. 7 arguably pertains to Husband's twelfth, thirteenth, and fourteenth objections to the magistrate's decision; assignment of error No. 10 arguably pertains to Husband's seventh objection to the magistrate's decision; assignment of error No. 11 arguably corresponds to Husband's first objection to the magistrate's decision; assignment of error No. 12 arguably corresponds with Husband's eighth objection to the magistrate's decision; assignment of error No. 21 arguably pertains to Husband's first and tenth objections to the magistrate's decision; assignment of error No. 26 corresponds with Husband's fourth objection to the magistrate's decision; assignment of error No. 27 corresponds with Husband's

fifth objection to the magistrate's decision; and assignments of error Nos. 29 and 30 correspond to Husband's sixth objection to the magistrate's decision.

{¶ 33} The record reflects, however, that Husband waived his 2d, 3d, 5th, 8th, 15th, 16th, 19th, 20th, 22d, 23d, 24th, 25th, 28th, 31st, 32d, 33d, 34th, 35th, 36th, 37th, 38th, 39th, 40th, 41st, 42d, 43d, and 44th assignments of error — except for a claim of plain error — because he failed to object to the magistrate's decision on the grounds set forth in these assignments of error. Furthermore, as set forth below, Husband does not present a plain error argument in support of these assignments of error on appeal.

### 4. Standard of Review

{¶ 34} The scope of this appeal is whether the trial court erred in ruling on Husband's objections and adopting the magistrate's decision.

> A trial court's decision to adopt a magistrate's decision is reviewed for an abuse of discretion. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 7. A discretionary act that reaches an end or purpose clearly against reason and evidence is an abuse of discretion. *In re Guardianship of S.H.*, 9th Dist. Medina No. 13CA0066-M, 2013-Ohio-4380, ¶ 9.

*Flemco, L.L.C. v. 12307 St. Clair, Ltd.*, 8th Dist. Cuyahoga No. 105956, 2018-Ohio-588, ¶ 15.

{¶ 35} With these preliminary matters in mind, we will proceed to address Husband's assignments of error. Husband's 44 assignments of error fall into four different categories:[1] (1) the trial court's delay in ruling on motions or denying

---

[1] See the "issues for review" section of Husband's brief.

motions as moot, (2) the trial court's allocation of property, (3) the trial court's decisions admitting evidence and testimony at trial, and (4) the factual determinations made by the trial court.

## B. Ruling on Motions

{¶ 36} Husband's 22d through 42d and 44th assignments of error pertain to the trial court's delay in ruling on motions or denial of Husband's motions as moot. As noted above, Husband waived all but plain error with respect to his 22d through 25th, 28th, 31st through 42d, and 44th assignments of error by failing to comply with Civ.R. 53.

## 1. Motions to Compel

{¶ 37} Husband's 22d, 23d, 24th, and 25th assignments of error pertain to motions to compel filed by Husband and Wife. In his 22d assignment of error, Husband argues that the trial court erred in denying his motion to compel Wife to produce evidence of her additional and undisclosed income. Husband presents the same argument, incorporated by reference, in support of his 23d and 24th assignments of error. *See* App.R. 12 and 16. In his 25th assignment of error, in which Husband argues that the trial court erred in granting Wife's motion to compel discovery, Husband presents the same argument, incorporated by reference, that he raises in his 2d assignment of error. *See* App.R. 12 and 16.

{¶ 38} Husband's argument is premised, in part, on the presumption that Wife received additional income from Bradley, and that she failed to disclose this

evidence. Based on our resolution of Husband's 2d and 4th assignments of error below, Husband's 22d, 23d, 24th, and 25th assignments of error necessarily fail.

{¶ 39} Furthermore, citing Sup.R. 40(A)(3), Husband argues that he was extremely prejudiced by the trial court's delay in ruling on these motions. Sup.R. 40(A)(3) provides "[a]ll motions shall be ruled upon within one hundred twenty days from the date the motion was filed, except as otherwise noted on the report forms." Husband's reliance on this rule is misplaced.

{¶ 40} The Rules of Superintendence are only "'general guidelines for the conduct of the courts'" and "'do not create substantive rights in individuals or procedural law.'" *In re C.O.*, 8th Dist. Cuyahoga Nos. 99334 and 99335, 2013-Ohio-5239, ¶ 14, quoting *In re K.G.*, 9th Dist. Lorain No. 10CA0016, 2010-Ohio-4399, ¶ 11; *In re M.T.*, 12th Dist. Warren No. CA2016-11-100, 2017-Ohio-1334, ¶ 44 ("The Rules of Superintendence for the Courts of Ohio do not have the same force of statute or case law; they are internal housekeeping rules that do not create substantive rights in individuals or procedural law. * * * Therefore, noncompliance with the rules is generally not grounds for reversal."); *State v. Henderson*, 2018-Ohio-5124, 125 N.E.3d 235, ¶ 70 (7th Dist.), citing *State ex rel. Culgan v. Collier*, 135 Ohio St.3d 436, 2013-Ohio-1762, 988 N.E.2d 564, ¶ 11 (the Rules of Superintendence do not provide an enforceable right to a defendant, and Sup.R. 40(A)(3) merely assists an appellate court in determining whether a trial court unduly delayed when ruling on a motion by showing what period is desirable for ruling).

{¶ 41} The reasonableness standard to which Husband appears to refer in his 22d assignment of error applies to a trial court's delay in ruling on defense motions in criminal cases that toll speedy trial time. *See Henderson* at ¶ 71, citing *State v. Caulton*, 7th Dist. Mahoning No. 09 MA 140, 2011-Ohio-6636, ¶ 38. This case involves divorce proceedings, not a criminal appeal, and the issue of tolling speedy trial time is inapplicable.

{¶ 42} For all of the foregoing reasons, Husband's 22d, 23d, 24th, and 25th assignments of error are overruled.

## 2. Motions to Show Cause

{¶ 43} Husband's 26th, 27th, 28th, 29th, and 30th assignments of error pertain to motions to show cause filed by Husband during the divorce proceedings.

{¶ 44} In his 26th assignment of error, Husband argues that the trial court erred in denying his motion to show cause regarding temporary support, filed in October 2017, without a hearing. Husband presents the same argument, incorporated by reference, in support of all five of his assignments of error. *See* App.R. 12 and 16.

{¶ 45} As an initial matter, Husband acknowledges that he made "technical errors" in some of his court filings. Furthermore, he acknowledges that "many of the pending motions would be discussed at status conferences or other hearings[.]" Husband's brief at 32.

{¶ 46} Nevertheless, he appears to contend that the trial court violated its duty to rule on the pending motions in a timely fashion by "punting" the pending

motions for months or years.  Again, Husband cites Sup.R. 40(A)(3), claiming that it provides a "statutory requirement" that the trial court violated by "ignoring" his motions for months or years.  As noted above, the 120-day time period referenced in the rule is not a statutory requirement, it is merely a general guideline.

{¶ 47} Finally, Husband appears to argue that the trial court erred by denying his numerous requests for a hearing after holding a hearing on a motion filed by Wife.  It is unclear what motion Husband is referring to.  He references "motion #392976," filed in September 2016.  The trial court's docket reflects that this was a "motion for Civil Rule 75N hearing."  It is unclear; however, which party filed this motion.

{¶ 48} In his 32d assignment of error, Husband, referencing the facts and arguments set forth in his 26th assignment of error, argues that the trial court erred in granting a hearing on Wife's motion to show cause, motion No. 393175, filed in October 2016.  Husband contends that the trial court "violate[d] basic fairness in treatment of the parties" by scheduling a hearing on Wife's motion to show cause.

{¶ 49} Husband fails to cite to any authority in support of his assertion that the trial court was required to hold a hearing on his motions to show cause, or that the trial court was required or obligated to hold a hearing on Husband's motions after holding a hearing on a motion filed by Wife.

{¶ 50} The current version of the Cuyahoga County Domestic Relations Court's Local Rules does not mandate a hearing on a motion to show cause.  *See Carr-Woodard v. Woodard*, 8th Dist. Cuyahoga No. 103283, 2016-Ohio-5134, ¶ 19,

citing C.P. Loc.Dom.Rel.R. 16(B).  Furthermore, the record reflects that Husband

did not properly or specifically request an evidentiary hearing in each of his motions

to show cause.[2]

> "Ohio courts have consistently recognized that a trial court does not abuse its discretion in not conducting a hearing when the movant never requested one." *Morgan v. Morgan*, 8th Dist. Cuyahoga No. 102498, 2016-Ohio-104, ¶ 9, citing *Bagnola v. Bagnola*, 5th Dist. Stark No. 2004CA00151, 2004-Ohio-7286 (rejecting appellant's claim that the trial court abused its discretion in finding appellant in contempt without conducting an evidentiary hearing when "appellant failed to properly and specifically request" a hearing); *Barton v. Barton*, 10th Dist. Franklin No. 96APF11-1526, 1997 Ohio App. LEXIS 2429 (June 3, 1997), citing Civ.R. 7(B)(2) (recognizing that there was "no requirement that the trial court hold an oral hearing," especially since appellant "never requested any further 'hearing,' oral or otherwise").

*Woodard* at ¶ 20.

{¶ 51} For all of the foregoing reasons, Husband's 26th, 27th, 28th, 29th,

30th, and 32d assignments of error are overruled.

{¶ 52} In his 31st assignment of error, Husband argues that the trial court

erred in denying his motion to show cause regarding noncompliance with a mutual

restraining order without holding a hearing.  Husband again claims that the trial

court violated Sup.R. 40(A)(3) by failing to rule on his motion for several months.

Furthermore, he summarily concludes that the trial court's delay in ruling on his

motion "clearly had a negative and prejudicial impact on [Husband's] case."

Husband's brief at 33.  Husband does not specify how he was prejudiced by the trial

court's delay in ruling on his motion, nor further develop his conclusory assertion

---

[2] For instance, Husband did not specifically request an oral or evidentiary hearing in his pro se motion to show cause, filed on October 10, 2017 (motion No. 405073).

that he was prejudiced by the delay.  Accordingly, Husband's 31st assignment of error is overruled.

### 3. Parenting Motions

{¶ 53} In his 33d assignment of error, Husband argues that the trial court erred in denying his motion to adopt the shared parenting plan, filed on January 24, 2018.  Husband presents the same argument, incorporated by reference, in support of his 34th assignment of error challenging the trial court's denial of his motion for immediate parenting time.  *See* App.R. 12 and 16.  Husband contends that the trial court abused its discretion, and failed to comply with the 120-day requirement set forth in Sup.R. 40(A)(3) by waiting more than two years to rule on Husband's motion for shared parenting.

{¶ 54} As noted above, the 120-day time period for ruling on motions referenced in Sup.R. 40(A)(3) is merely a general guideline, it is not a requirement. Furthermore, the Rules of Superintendence do not create substantive or enforceable rights, and a trial court's failure to comply with the rules is generally not grounds for reversal.  Accordingly, Husband's 33d and 34th assignments of error are overruled.

### 4. Motion for Reconsideration

{¶ 55} In his 35th assignment of error, Husband argues that the trial court erred in granting Wife's motion for reconsideration.

{¶ 56} Husband's supplemental objections to the magistrate's decision were filed on November 6, 2019.  On November 18, 2019, Wife moved for a 45-day

extension of time to respond to supplemental objections. Wife requested an extension of time because Husband's objections

> contain fourteen (14) objections, with each objection being composed of multiple arguments. In addition, the within case contains eight (8) transcript files of which [Wife's] counsel must review to compose a complete and just argument on [Wife's] behalf. In addition, [Husband] has requested and been granted five (5) extensions of time in the within action, while this is [Wife's] first request for an extension of time.

{¶ 57} The trial court granted Wife's motion for an extension of time, in part. The trial court stated that the 45-day extension requested by Wife was not permissible under the local rules. The trial court granted Wife an additional 7 days to respond, bringing the total to 21 days.

{¶ 58} Wife filed a motion for reconsideration. Therein, Wife argued that the trial court had deviated from the local rules at Husband's request, and emphasized again that an additional extension was necessary based on the voluminous record and the "incredibly lengthy" supplemental objections filed by Husband.

{¶ 59} On December 5, 2019, the trial court granted Wife's motion for reconsideration, ordering her to file her response to Husband's supplemental objections on or before January 2, 2020. Wife's response was filed on January 2, 2020, in compliance with the trial court's order.

{¶ 60} Trial courts enjoy broad discretion in determining whether to grant a motion for extension of time, and a trial court's decision will not be disturbed absent an abuse of discretion. *Johnson v. Univ. Hosp. Case Med. Ctr.*, 8th Dist. Cuyahoga No. 90960, 2009-Ohio-2119, ¶ 5. An abuse of discretion implies a decision that is

unreasonable, arbitrary, or unconscionable.  *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13.

{¶ 61} Husband contends that the extension that the trial court granted to Wife is not contemplated under the local rules or supported by case law.  Husband directs this court to Loc.R. 27 of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division, governing objections to magistrate's decision.  Loc.R. 27.3(e), governing extensions of time, provides, "[t]he time to file a brief in opposition to objections or supplemental objections may be extended, at the discretion of the Court, for up to but not more than a total of twenty-one (21) days from the date the objections or supplemental objections are filed."

{¶ 62} After reviewing the record, we acknowledge that the trial court extended the time for Wife to respond to Husband's supplemental objections beyond the 21-day limit set forth in Loc.R. 27.3(e).  Husband contends that the trial court's violation of the local rule constitutes "an extreme abuse of [the trial court's] discretion."  He fails to further develop this argument or argue, much less demonstrate, how he was prejudiced by the trial court's ruling.

{¶ 63} We are unable to conclude the trial court's judgment granting Wife's motion for reconsideration and providing her with an extension of time to respond to Husband's supplemental objections was unreasonable, arbitrary, or unconscionable based on the totality of the circumstances in this case.  The divorce proceedings commenced in June 2016.  At the time Wife's counsel requested an extension of time, the matter had been pending for more than three years.  There

were multiple hearings held in this case, and as a result, several volumes of transcripts. Husband raised multiple legal and factual issues within his 14 objections to the magistrate's decision. Finally, the record reflects that the trial court granted Husband three extensions of time to file his supplemental objections to the magistrate's decision.

{¶ 64} For all the foregoing reasons, the trial court did not abuse its discretion in granting Wife's motion for reconsideration. Husband's 35th assignment of error is overruled.

### 5. Motion to Quash

{¶ 65} In his 36th assignment of error, Husband argues that the trial court erred in granting the motion to quash filed by the minor child's GAL. The GAL moved to quash a subpoena issued by Husband requesting production of "any and all custody evaluation reports written for contested custody cases and intake questionnaires for both [Husband] and [Wife]." In the motion to quash, the GAL argued that the file was protected under attorney-client privilege. The trial court granted the motion to quash on August 22, 2018.

{¶ 66} Husband does not address the relevant factual or legal issues that were involved in his subpoena or the GAL's motion to quash. Nor does he develop any argument demonstrating how the trial court erred in granting the motion to quash. Rather, he contends that the trial court showed "a willingness to deny [Husband] access to documents and information required to effectively administer his case," and that the trial court's judgment granting the motion to quash evidenced

a "biased double standard" that was on display throughout the divorce proceedings. Husband's brief at 35.

{¶ 67} Husband has failed to meet his burden of demonstrating error on appeal. Husband's 36th assignment of error is overruled.

### 6. Motion to Limit Testimony and for Further Testimony

{¶ 68} In his 37th assignment of error, Husband argues that the trial court erred in granting Wife's motion to limit the scope of testimony at the March 7, 2018 additional hearings.

{¶ 69} In his 38th assignment of error, Husband argues that the trial court erred in granting Wife's motion for further testimony. He presents the same argument, incorporated by reference, in support of both assignments of error. *See* App.R. 12 and 16.

{¶ 70} On December 12, 2017, Wife filed a motion to reopen the case for further testimony pursuant to Civ.R. 59(A)(8). Therein, she argued that after the conclusion of the divorce trial, her accountant discovered federal income tax liability exceeding $600,000 in her and Husband's name. Wife requested that the matter be reopened for further testimony on the tax issue and for the trial court to make a determination regarding which party was responsible for the debt. The trial court granted Wife's motion on January 12, 2018, and set a hearing for March 7, 2018.

{¶ 71} On January 10, 2018, Husband filed a motion "to hear further testimony." Therein, he requested that if the case is reopened based on the financial issue raised by Wife, that the trial court also consider "custody related issues." The

trial court granted Husband's motion on January 22, 2018. Thereafter, Husband filed (1) a motion for shared parenting time, (2) a motion to show cause regarding Wife purportedly excluding Husband from the family's health insurance policy, (3) a second request for production of documents, and (4) a second set of interrogatories.

{¶ 72} On February 20, 2018, Wife filed a motion to strike Husband's four filings and a motion to limit the scope of the testimony during the March 7, 2018 hearing to the $600,000 in federal income tax liability that Wife learned about after the divorce trial that concluded in October 2017. Wife sought to preclude Husband from relitigating issues that were already addressed during the 2017 divorce trial. Husband did not oppose Wife's motion to limit the scope of the testimony. The trial court granted Wife's motion to limit the scope of the testimony.

{¶ 73} In this appeal, Husband argues that the trial court erred by granting Wife's motion to limit the scope of testimony to financial issues, and specifically the outstanding tax liability, because it had previously granted Husband's motion for further testimony, in which Husband requested the case to be reopened for consideration of "custody related issues." Husband contends that either both parties should have been permitted to present evidence at a new hearing, or neither party should have been permitted to do so.

{¶ 74} Contrary to Husband's assertion, the trial court did not permit Wife to present evidence at the new hearings and prohibit Husband from doing so. Rather, the trial court limited the scope of the new hearings to the tax liability issue and allowed both parties to present evidence on that issue.

{¶ 75} The trial court did not abuse its discretion in limiting the scope of the new hearings to the tax liability issue. The custody-related issues were litigated during the 2017 divorce trial. The outstanding tax liability, however, was not discovered until after the divorce proceedings concluded. Husband was not prohibited from presenting evidence pertaining to the tax issue at the new hearings.

{¶ 76} For all of the foregoing reasons, the trial court's rulings granting Wife's motion for further testimony and to limit the scope of the testimony were not unreasonable, arbitrary, or unconscionable. Husband's 37th and 38th assignments of error are overruled.

### 7. Motion for a Continuance

{¶ 77} In his 39th assignment of error, Husband argues that the trial court erred in denying Husband's motion for a continuance, filed on October 11, 2017, the first day of trial.

{¶ 78} Husband argues that at least 15 motions remained pending when the magistrate commenced trial on October 11, 2017. The motions included motions to compel discovery, motions to show cause, a motion to appoint a receiver, and motions regarding the sale of the marital home. He appears to contend that he requested a continuance because without the trial court ruling on these motions, it would have been "virtually impossible to try his case on equal footing with [Wife.]" Husband's brief at 36.

{¶ 79} A trial court has broad discretion in ruling upon a motion or request for a continuance of trial proceedings. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d

1078 (1981), syllabus. This court will not reverse the trial court's decision to deny a continuance absent an abuse of that discretion. *Id.*

{¶ 80} In this case, we find no basis upon which to conclude that the trial court's judgment denying Husband's request for a continuance was unreasonable, arbitrary, or unconscionable. The record reflects that Husband's motion, filed on the day that trial was set to commence, was untimely. The trial proceedings were set to commence at 9:30 a.m. Husband was not present in court at that time. The magistrate waited until 11:30 a.m. to commence the proceedings. Husband was still not present. Husband arrived during the opening statement of Wife's counsel. At that time, he advised the court that he had just filed a motion for a continuance of trial during the past hour. Husband did not have any copies of his motion to provide to the magistrate.

{¶ 81} Husband again argues that the trial court abused its discretion by failing to promptly rule on the motions. He acknowledges, for the first time, that the trial court "is not strictly bound by the 120 day time limit to rule on motions under Sup.R. 40(A)(3)[.]" Husband's brief at 36. In support of his argument that the trial court's delay in ruling on his motions constituted an abuse of discretion, Husband directs this court to *State ex rel. Collins v. Sweeney*, 7th Dist. Mahoning No. 16 MA 0007, 2016-Ohio-1171.

{¶ 82} *Sweeney* involved an original action in which the defendant-petitioner filed writs of mandamus and habeas corpus seeking an order compelling the trial court to rule on his motion to vacate his aggravated robbery and attempted

murder convictions that had been pending for one year. The Seventh District granted a writ of mandamus compelling the trial court to rule on petitioner's motion to vacate.

{¶ 83} Husband's reliance on *Sweeney* is misplaced. Here, unlike in *Sweeney*, Husband did not file an original action requesting an order compelling the trial court to rule on his pending motions. Rather, Husband requested an untimely continuance. Furthermore, in *Sweeney*, at the time the motion to vacate was filed, the criminal proceedings had concluded — the defendant-petitioner pled guilty and had been sentenced, and there were no other outstanding issues or motions that needed to be resolved by the trial court. In this case, the divorce proceedings were pending, and Husband had filed more than a dozen pro se motions that the trial court had to resolve.

{¶ 84} For all of the foregoing reasons, Husband's 39th assignment of error is overruled.

### 8. Motions for Temporary Restraining Order ("TRO")

{¶ 85} Husband's 40th, 41st, and 42d assignments of error pertain to Husband's motions for temporary restraining orders ("TRO"). As noted above, Husband waived all but plain error with respect to his 40th, 41st, and 42d assignments of error by failing to object to the magistrate's decision on the grounds set forth in these three assignments of error. Furthermore, Husband does not present a plain error argument in support of these assignments of error on appeal. Therefore, he is unable to demonstrate that this "is an extremely rare case where

exceptional circumstances exist that require application of the plain error doctrine." *Hahn v. Hahn*, 8th Dist. Cuyahoga No. 96984, 2012-Ohio-594, ¶ 21, citing *Woodworking Shop, L.L.C. v. Shay*, 12th Dist. Butler No. CA2009-12-298, 2010-Ohio-4568, ¶ 11.

{¶ 86} In his 40th assignment of error, Husband argues that the trial court erred in denying Husband's motion for a TRO preventing Wife's return to the marital residence. Husband's motion was filed on May 30, 2017. He appears to contend that the trial court was biased against him and that this bias denied him a fair trial.

> There is a presumption that "a judge is unbiased and unprejudiced in matters over which he or she presides, and the appearance of bias or prejudice must be compelling in order to overcome this presumption." *State v. Reese*, 8th Dist. Cuyahoga No. 107714, 2019-Ohio-4670, ¶ 24. The Chief Justice of the Ohio Supreme Court, or his or her designee, has the "exclusive jurisdiction to determine a claim that a common pleas judge is biased or prejudiced." *Jones v. Billingham*, 105 Ohio App.3d 8, 11, 663 N.E.2d 657 (2d Dist.1995), citing Section 5(C), Article IV, Ohio Constitution.

*Johnson v. U.S. Title Agency, Inc.*, 8th Dist. Cuyahoga No. 108547, 2020-Ohio-4056, ¶ 101; *see also Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 58, citing *Fisher v. Fisher*, 8th Dist. Cuyahoga No. 95821, 2011-Ohio-5251 (recognizing that appellant was required to raise his claim that the trial court was biased against him pursuant to the provisions set forth in R.C. 2701.03, and that the appellate court lacked authority to void the trial court's judgment based on the allegation of bias).

{¶ 87} In his motion for a TRO, Husband alleged, in part, that Wife was cyberstalking him and conducting surveillance. He alleged that Wife has been physically, emotionally, and verbally abusive to him throughout the duration of the marriage.

{¶ 88} The record reflects that Husband's allegations were unsubstantiated. Husband has failed to demonstrate plain error. Husband's 40th assignment of error is overruled.

{¶ 89} In his 41st assignment of error, Husband argues that the trial court erred in denying his motion for a TRO in which he alleged that Wife was stalking and harassing him, removing and destroying files from the marital home, and transferring or liquidating marital assets. Husband contends that the trial court delayed ruling on this motion for more than five months at which point it became moot. Husband's motion was filed on May 15, 2017, and denied on October 13, 2017. The allegations in Husband's motion were similar to the allegations in the motion for a TRO Husband filed on May 30, 2017.

{¶ 90} As noted above, Husband's allegations were unsubstantiated by the record. Husband has failed to demonstrate plain error. Husband's 41st assignment of error is overruled.

{¶ 91} In his 42d assignment of error, Husband argues that the trial court erred in denying his motion for a TRO regarding Wife's purported tampering with Husband's mail and request for sanctions. Husband filed another motion for a TRO on January 4, 2019. In this motion, Husband alleged that (1) Wife harassed and

abused him for more than 20 years, (2) Wife is mentally disturbed, and has mental problems which Husband did not specify, (3) Wife had an "obsessive focus" on Husband, (4) Wife harasses and stalks him, and has done so for 2 years since she moved out of the marital residence, (5) Wife tracks him using GPS technology, (6) Wife was emotionally and physically abusive to Husband throughout the course of their 20-year marriage, and (7) Wife stole his mail and arranged with the postal service to have all of Husband's mail returned to the senders rather than delivered.

{¶ 92} After reviewing the record, we find Husband's allegations to be unsubstantiated by the record. Husband has failed to demonstrate plain error. Husband's 42d assignment of error is overruled.

### 9. Motion to Appoint a Receiver

{¶ 93} In his 44th assignment of error, Husband argues that the trial court erred in denying Husband's motion to appoint a receiver, filed on June 11, 2017.

{¶ 94} A trial court's decision to appoint a receiver is within the sound discretion of the trial court, and this court will not disturb the trial court's ruling absent an abuse of that discretion. *Grand Arcade Condo. Owners' Assn. v. GA 110, L.L.C.*, 8th Dist. Cuyahoga No. 105619, 2017-Ohio-8736, ¶ 19, citing *Jamestown Village Condo. Owners Assn. v. Market Media Research*, 96 Ohio App.3d 678, 689, 645 N.E.2d 1265 (8th Dist.1994), citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 73, 573 N.E.2d 62 (1991). An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Mangano v. 1033 Water Street, L.L.C.*, 8th Dist. Cuyahoga No. 106861, 2018-Ohio-5349, ¶ 11, citing

*Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette Nos. CA2015-01-001 and CA2015-01-002, 2015-Ohio-4452, ¶ 11.

{¶ 95} As noted above, Husband waived all but plain error with respect to his 44th assignment of error by failing to object to the magistrate's decision on the grounds set forth in this assignment of error. Furthermore, because Husband does not present a plain error argument in support of this assignment of error on appeal, he is unable to demonstrate that this is an extremely rare case in which exceptional circumstances warrant application of the plain error doctrine.

{¶ 96} Husband again argues that the trial court abused its discretion by failing to rule on his motion within 120 days, as required by Sup.R. 40(A)(4). Furthermore, Husband appears to argue that his motion requesting the emergency appointment of a receiver contradicts the magistrate's or trial court's finding that Husband concealed or attempted to conceal financial information from the court.

{¶ 97} After reviewing the record, we find that Husband has failed to demonstrate plain error. Husband's motion for an emergency appointment of a receiver is based, in part, on Husband's allegations that the court erred in determining the parties' respective incomes. Husband alleged that Wife was voluntarily underemployed and that "[Wife] has convinced the court that [Husband] is making almost [$130,000] per year when [Husband] is on pace to make less than $10,000 this year." Finally, Husband argued that the appointment of a receiver was necessary because "[f]or well over a year, the [p]arties in this case have conducted

an experiment to determine the impact of allowing [Wife] to financially abuse [Husband] in this case." Husband's allegations are unsubstantiated by the record.

{¶ 98} For all of the foregoing reasons, Husband's 44th assignment of error is overruled.

## C. Allocation of Property

{¶ 99} Husband's 7th, 14th, 15th, 16th, 17th, 18th, and 19th assignments of error pertain to the trial court's allocation of property. As noted above, Husband waived all but plain error with respect to his 15th, 16th, and 19th assignments of error by failing to comply with Civ.R. 53. Furthermore, because Husband does not present a plain error argument in support of these assignments of error on appeal, he is unable to demonstrate that this is an extremely rare case in which exceptional circumstances warrant application of the plain error doctrine.

## 1. Marital Debt

{¶ 100} In his seventh assignment of error, Husband argues that the trial court erred in its allocation of marital debt. Husband specifically challenges the trial court's decision allocating 100 percent of the marital debt to Husband, including Wife's credit card debt that was purportedly incurred prior to the marriage.

{¶ 101} Husband argues that this constituted an abuse of discretion under R.C. 3105.171(C), governing the division of separate and marital property, which provides:

> (1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses

in the manner the court determines equitable.  In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section.

(2) Each spouse shall be considered to have contributed equally to the production and acquisition of marital property.

{¶ 102} Husband's argument regarding Wife's credit card debt that predated the marriage is unsupported by the record.  Husband's argument is based entirely on his own testimony at trial that he did not have any credit cards, and that there were unpaid credit card bills from "years previous."  Husband did not specify the years in which this credit card debt was incurred.

{¶ 103} Husband testified that the outstanding credit card debt was $45,000, and that the credit card debt in Wife's name was much higher than the credit card debt in Husband's name.  Husband asserted that there was a lien on the marital home for approximately $30,000 based on the credit card debt in Wife's name.  Husband testified that the lienholder was Unifund CCR.

{¶ 104} Husband's trial testimony is directly contradicted by his financial disclosure statement.  Husband did not identify Unifund CCR as a lienholder on the marital home.  Husband's financial disclosure statement provides that there was a credit card in Husband's name, that the credit account was "joint," and that this credit card was used by both Husband and Wife, with a total outstanding balance of $45,000.  The statement further provides that there was a credit card in Wife's name, that this line of credit was in Wife's name and only used by Wife, with a total outstanding balance of $10,500.

**{¶ 105}** Husband further argues that the trial court abused its discretion in failing to value the marital estate, and by failing to consider debt when dividing marital property. Because the trial court purportedly did not value or consider this property, Husband contends that it lacked discretion to allocate the property.

> In a divorce proceeding, a trial court must divide the marital property of the parties equitably. R.C. 3105.171(B); *Cherry v. Cherry* (1981), 66 Ohio St.2d 348, 421 N.E.2d 1293. In order to divide property equitably, the trial court must place a value on each contested item of property. *Pawlowski v. Pawlowski* (1992), 83 Ohio App.3d 794, 615 N.E.2d 1071. Valuing property involves factual inquiries, requiring an appellate court to apply a manifest weight of evidence standard of review. *Wright v. Wright* (Nov. 10, 1994), Hocking App. No. 94CA02, 1994 Ohio App. LEXIS 5207. An appellate court will not reverse a trial court's valuation if it is supported by some competent, credible evidence. *Seasons Coal Co. v. Cleveland*[, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984)]; *see, also, Haynes v. Haynes*, [8th Dist.] Cuyahoga No. 92224, 2009-Ohio-5360.

*Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, at ¶ 24. Furthermore, in dividing marital property, a trial court must take into account marital debt. *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229, ¶ 14 (8th Dist.), citing *Barkley v. Barkley*, 119 Ohio App.3d 155, 169, 694 N.E.2d 989 (4th Dist.1997).

**{¶ 106}** In the instant matter, the magistrate's decision provides that both Husband and Wife "had ample opportunity to value and verify all marital property, separate property, and other assets, debts, income and expenses." The parties filed briefs and supporting evidence addressing the issue of temporary orders of spousal support, child support, and custody pursuant to Civ.R. 75(N). The magistrate concluded that the evidence submitted by Husband in relation to the temporary orders was the most credible evidence in order to determine Husband's actual

income, assets, debts, and liabilities. The magistrate took judicial notice of this evidence in its June 2019 decision.

{¶ 107} The magistrate identified the following assets and debts that were in dispute: the Shaker Heights marital home, the 2013 Jeep, the 2012 GMC Acadia, Bradley Metal Fabricating, and miscellaneous personal property. Both parties submitted financial disclosure statements and affidavits in which they identified real estate interests, other assets, unsecured debts, dependent children, annual income, and various expenses.

{¶ 108} The record reflects that the trial court divided the assets and debts consistent with the evidence. *See Cianfaglione v. Cianfaglione*, 11th Dist. Lake No. 2017-L-134, 2019-Ohio-71, ¶ 43 (finding no abuse of discretion when the trial court did not value a company, and divided the assets of a company consistent with the evidence), citing *Pearlstein v. Pearlstein*, 11th Dist. Geauga No. 2008-G-2837, 2009-Ohio-2191, ¶ 117 (upholding the lack of value and division of a marital asset because no evidence was presented as to value of the asset).

{¶ 109} In the instant matter, neither party presented expert testimony regarding the valuation of the property, assets, or debts at issue. Husband valued the real estate interests, assets, and debts in his financial disclosure statement. The magistrate and the trial court ultimately concluded, however, that the evidence presented by Husband regarding his income, assets, and liabilities was not credible. *See Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, at ¶ 35. The trial

court was in the best position to make this determination. *See Allan v. Allan*, 8th Dist. Cuyahoga No. 107142, 2019-Ohio-2111, ¶ 80.

{¶ 110} To the extent that Husband argues that the magistrate failed to consider the statutory factors in dividing property, Husband's argument is entirely unsupported by the record. The magistrate's decision thoroughly outlines the R.C. 3105.171 factors based upon which the magistrate recommended the property be divided between Husband and Wife. The magistrate concluded that it would not be equitable to divide the marital property equally based on the factors set forth in R.C. 3105.171(F). The magistrate made the following finding with respect to division of property:

> The Court finds [Wife] has fully and completely disclosed all marital property, separate property, and any other assets, debts, income and expenses subject to the jurisdiction of this Court. The Court also finds [Husband] has done the exact opposite — instead, [Husband] employed every possible measure imaginable to both conceal his financial information from [Wife] and the Court, and confuse the financial issues present in this case.

{¶ 111} The trial court acknowledged that the property was not equally divided between Husband and Wife. The trial court concluded that the division of property was "equitable for the following reasons: [Husband] has failed to present any credible evidence regarding his income, assets and liabilities, therefore it is impossible for the Court to accurately determine his actual financial situation. In light of all the evidence presented at trial, the above division of property is equitable."

{¶ 112} For all of the foregoing reasons, we find no basis upon which to conclude that the trial court erred or abused its discretion in its allocation of marital debt. Husband's seventh assignment of error is overruled.

## 2. Attorney Fees

{¶ 113} In his 14th assignment of error, Husband argues that the trial court erred in awarding attorney fees to Wife. Husband argues that the evidence demonstrates he does not have the ability to pay attorney fees, and that his ability to pay is a "key factor" under R.C. 3105.18. He further contends that Wife failed to demonstrate that (1) she was deprived of her ability to litigate without an award of attorney fees or (2) Husband's failure to provide her with evidence resulted in her incurring additional attorney fees. Husband argues that the only evidence in the record regarding the additional attorney fees incurred by Wife was the testimony of her attorney.

{¶ 114} After reviewing the record, we find no basis upon which to conclude that the trial court's judgment awarding $10,000 in attorney fees to Wife was unreasonable, arbitrary, or unconscionable.

{¶ 115} Initially, Husband's reliance on R.C. 3105.18, governing awards of spousal support, is misplaced. R.C. 3105.18(H) was repealed in 2005. *See Allan*, 8th Dist. Cuyahoga No. 107142, 2019-Ohio-2111, at ¶ 96, citing Am.Sub.H.B. No. 36, effective April 27, 2005. Former R.C. 3105.18(H) required the trial to determine whether a party had the ability to pay the attorney fees awarded by the trial court.

{¶ 116} The awarding of attorney fees in divorce cases is now governed by

R.C. 3105.73(A), which provides,

> In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party *if the court finds the award equitable*. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.

(Emphasis added.)

> In enacting R.C. 3105.73, the Ohio General Assembly set forth "a different standard for courts to apply when deciding whether an award of fees is warranted." *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.2d 168, ¶ 90 (10th Dist.); *see also Humphrey v. Humphrey*, 11th Dist. Ashtabula No. 2006-A-0083, 2007-Ohio-6738, ¶ 67 ("[T]he latest statute sets out a different standard relating to whether an award of fees is appropriate.").
>
> Under former R.C. 3105.18(H), before a trial court could award attorney fees to a party, it had to find: (1) *the other party has the ability to pay the fees*; (2) the party seeking fees needs them to fully litigate his or her rights and adequately protect his or her interests; and (3) the fees requested are reasonable. Awarding attorney fees under R.C. 3105.73, however, is "less burdensome" than the previous requirements of R.C. 3105.18(H). [*Dannaher v. Newbold*, 10th Dist. Franklin Nos. 05AP-172 and 05AP-650, 2007-Ohio-2936, ¶ 22], citing *Karales v. Karales*, 10th Dist. Franklin No. 05AP-856, 2006-Ohio-2963. A court may now award "reasonable" attorney fees if it determines the award is equitable. *Id.* In making the equitable determination, "the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate[.]" *Id.*

(Emphasis added.) *Allan* at ¶ 99-100.

{¶ 117} Accordingly, although the trial court may consider Husband's assets

and income in awarding attorney fees under R.C. 3105.73(A), it was not required to

make a specific finding or determination that Husband has the ability to pay the

attorney fees imposed. Furthermore, Husband's inability to pay argument is predicated entirely on his assertion that his income "has ranged well under $40,000 for the past 5 years." Husband's brief at 26. As set forth in the analysis of Husband's first assignment of error, this argument is unsupported by the record.

{¶ 118} Nevertheless, the record supports the trial court's imposition of attorney fees. The magistrate explained that Wife incurred more than $30,000 in attorney fees in the divorce action. She requested an award of $10,000 in attorney fees.

{¶ 119} Wife's counsel submitted a thorough invoice detailing the amount of time he spent on the case. Wife's counsel testified that $30,019 in attorney fees accrued at the time trial commenced in 2017. Wife's counsel testified that he had to file multiple discovery-related motions.

{¶ 120} As set forth in further detail in the analysis of Husband's first assignment of error, the magistrate found that Husband engaged in "diversionary tactics" throughout the litigation, particularly in regard to his income and the financial issues involved in the divorce proceedings. The magistrate determined that "[t]here were unique issues of procedural complexities in this case in that the case was egregiously complicated by [Husband's] conduct to an extent this Court has frankly never witnessed previously." The magistrate determined that the attorney fees incurred by Wife were reasonable. The magistrate concluded that Husband should contribute to the $30,000 in attorney fees incurred by Wife because "based on [Husband's] conduct throughout this litigation he has caused

[Wife] to incur extraordinary professional fees[.]" In overruling Husband's objection to the magistrate's award of attorney fees, the trial court concluded that the award of attorney fees was supported by the record.

{¶ 121} Husband appears to dispute the magistrate's finding, arguing that the proceedings were complicated or prolonged not by Husband's conduct, but because Wife failed to provide discovery to Husband and the trial court failed to rule on motions in a timely manner. Husband's assertion is unsupported by the record.

{¶ 122} For all of the foregoing reasons, Husband's 14th assignment of error is overruled. The trial court's judgment awarding attorney fees to Wife is supported by competent, credible evidence in the record. The trial court's judgment awarding $10,000 in attorney fees to Wife was reasonable and equitable based on the totality of the circumstances of this case. Accordingly, the trial court did not abuse its discretion in awarding attorney fees to Wife.

### 3. GAL Fees

{¶ 123} In his 15th assignment of error, Husband argues that the trial court erred in allocating GAL fees. The trial court divided GAL fees equally between Husband and Wife, ordering each party to pay $4,545 in GAL fees, minus credit for any payments previously made.

{¶ 124} Husband appears to argue that he should not be responsible for paying GAL fees because the GAL "demonstrated a clear preference for [Wife]" and Husband did not benefit from the services provided by the GAL. Husband's argument is entirely unsupported by the record.

{¶ 125} The GAL was appointed to represent the best interest of the minor child. The GAL submitted a thorough and detailed recommendation and report, and specified the duties he performed in preparing his report and recommendation. The GAL also submitted a detailed invoice documenting the amount of time he spent on the case between November 2016, when he was appointed, and the commencement of trial in October 2017.

{¶ 126} For all of the foregoing reasons, Husband has failed to demonstrate plain error. Husband's 15th assignment of error is overruled.

### 4. Credit Card Debt

{¶ 127} In his 16th assignment of error, Husband argues that the trial court erred in determining that Husband should bear the full cost of credit card debt in Wife's name that predated the marriage. Husband incorporates by reference his argument in support of his 19th assignment of error. *See* App.R. 12 and 16.

{¶ 128} We decline to construct an argument on Husband's behalf. Husband has failed to demonstrate plain error. Husband's 16th assignment of error is overruled.

### 5. Vehicles

{¶ 129} In his 17th assignment of error, Husband argues that the trial court erred in awarding both vehicles, the 2013 Jeep and 2012 GMC Acadia, to Husband. He contends that the vehicles were a debt, not an asset.

{¶ 130} The record reflects that the 2013 Jeep was registered in Husband's name, and the Acadia was registered to both Husband and Wife. Wife primarily

drove the Acadia and Husband primarily drove the Jeep. Wife testified at trial that Husband denied her access to the Acadia during the divorce litigation. Husband would not leave the keys at the house for Wife. Husband disputed Wife's allegation. However, he conceded that both the 2013 Jeep and the Acadia were in his possession at the time of trial.

{¶ 131} Wife testified that she acquired another vehicle. Wife's testimony was supported by Husband's financial disclosure statement, in which Husband lists a 2016 Jeep Cherokee as being in the possession of and titled to Wife.

{¶ 132} Based on the foregoing analysis, the trial court did not err or abuse its discretion in awarding the Jeep and Acadia to Husband and ordering him to pay and hold Wife harmless from the payments associated with the vehicles. Husband's 17th assignment of error is overruled.

### 6. Student Loans

{¶ 133} In his 18th assignment of error, Husband argues that the trial court erred in determining that Wife is not responsible for student loans that were taken out in Husband's name during the marriage.

{¶ 134} After Husband filed his supplemental objections to the magistrate's decision, the trial court issued a judgment entry on March 25, 2020, ordering Husband to "file * * * documentation (incorporated into a properly framed affidavit) setting forth the name(s) of lender(s), and current account balance of any student loans in [Husband's] name accrued during marriage." The trial court's judgment

entry stated that the record contained insufficient evidence based upon which the trial court could value, characterize, or allocate the student loan debt.

{¶ 135} On April 6, 2020, Husband submitted an affidavit and a letter, dated February 22, 2020. The letter identified the loan servicer as Navient, the guarantor creditor as Ascendium, and a total balance due of $195,477.32. The letter indicated that Husband was "in default on [the] previously rehabilitated loan(s)[.]" The letter did not provide any information about when the loan or loans were taken out, the original principal balance or balances, when the loan or loans were rehabilitated, when Husband defaulted on the loan or loans, or whether Wife was a party to the loan or loans.

{¶ 136} The trial court sustained Husband's thirteenth objection to the magistrate's decision, in which he argued that the magistrate erred in failing to address the outstanding student loan debt existing in Husband's name. Husband appeared to argue that the student loan debt was marital debt for which he and Wife were both responsible. The trial court concluded that the magistrate failed to characterize the student loan debt as separate or marital debt or allocate the debt. Nevertheless, the trial court concluded that it was equitable that Husband bear responsibility for all student loan debt in his name, and that he indemnify and hold Wife harmless from such debts. In support of this decision, the trial court concluded that Husband "mingled [Bradley] business funds and family funds in a single checking account" and that Husband "largely controlled the family finances throughout the marriage." Under these circumstances, the trial court concluded

that it was equitable that Husband bear responsibility for all student loan debt in his name, and that he indemnify and hold Wife harmless from such debts.

{¶ 137} Husband testified at trial that he had $2,500 in student loan debt before he became engaged to Wife. He explained that the vast majority of the student loan debt was taken out "very far into our marriage and actually when I was obtaining my master's in accounting at Cleveland State." The family took out a loan in excess of the cost of tuition and used "a good portions of those moneys for our living expenses[.]" Husband generically alleged that "[him and Wife] both benefitted from [these loans]." Husband failed to present further evidence to support his assertion.

{¶ 138} Husband testified that although his advanced education and degrees were expensive, they did pay dividends. Husband has a bachelor's degree in English and communication, a master's degree in business administration, and a master's degree in accounting. Wife, on the other hand, has a bachelor's degree in political science. The record supports the trial court's determination that Husband "largely controlled the family finances throughout the marriage."

{¶ 139} After reviewing the record, we find no basis upon which to conclude that the trial court erred in allocating the student loan debt to Husband. The trial court provided Husband with an opportunity to present additional information about the student loans based upon which the trial court could characterize, value, and allocate the debt. Husband failed to take advantage of this opportunity. "Under the invited error doctrine, a party may not take advantage of an alleged error that

the party induced or invited the trial court to make." *Yuse v. Yuse*, 8th Dist. Cuyahoga No. 89213, 2007-Ohio-6198, ¶ 14, citing *State v. Woodruff*, 10 Ohio App.3d 326, 327, 462 N.E.2d 457 (2d Dist.1983).

{¶ 140} For all of the foregoing reasons, Husband's 18th assignment of error is overruled.

### 7. Division of Property

{¶ 141} In his 19th assignment of error, Husband argues that the trial court erred in determining the division of property. In support of his argument, Husband generally references "the issues outlined above (which are reiterated here by reference)[.]" We decline to construct an argument on Husband's behalf. *See* App.R. 12 and 16. Husband has failed to demonstrate plain error. Husband's 19th assignment of error is overruled.

{¶ 142} In his 20th assignment of error, Husband argues that the trial court erred in determining spousal support. As an initial matter, Husband waived all but plain error with respect to his 20th assignment of error by failing to comply with Civ.R. 53, and Husband does not present a plain error argument in this appeal.

{¶ 143} Husband's argument is predicated, in part, on his assertions that the trial court erred in determining Husband's and Wife's income. Based on our resolution of Husband's first and fourth assignments of error, Husband's 20th assignment of error necessarily fails. Husband has failed to demonstrate plain error. Accordingly, Husband's 20th assignment of error is overruled.

## D. Admission of Testimony and Evidence at Trial

{¶ 144} Husband's 2d, 3d, and 43d assignments of error pertain to the magistrate's admission of testimony and evidence at trial. As noted above, Husband waived all three of these assignments of error, except for plain error, by failing to comply with Civ.R. 53, and Husband does not present a plain error argument in this appeal.

{¶ 145} In his second assignment of error, Husband argues that the trial court erred by not considering all evidence submitted during relevant hearings in this case when rendering its final decision. Husband appears to challenge the trial court's judgment granting the GAL's motion to admit all prior evidence submitted in the case, and subsequent determination, in its April 16, 2020 judgment entry ruling on Husband's objections, that it would only consider evidence and testimony that was presented during the magistrate's hearings.[3] Husband appears to argue that he relied on the trial court's decision to admit prior evidence and suffered extreme prejudice when the trial court purportedly rescinded its decision. Finally, Husband appears to challenge the magistrate's determination to limit direct-examination of witnesses to 1 hour and cross-examination of witnesses to 30 minutes.

{¶ 146} In its April 16, 2020 judgment entry, the trial court recognized that in ruling on Husband's objections, the trial court "'may only consider the evidence

---

[3] We note that Husband filed this appeal from the trial court's June 17, 2020 judgment entry of divorce, not the trial court's April 16, 2020 judgment ruling on Husband's objections to the magistrate's decision

the court admitted at trial.  Other evidence in the record but not admitted at trial may not be considered.'"  Trial court's April 16, 2020 judgment entry at p. 1, quoting *Hoaglin Holdings v. Goliath Mtge., Inc.*, 8th Dist. Cuyahoga No. 83657, 2004-Ohio-3473, ¶ 15.  Accordingly, the trial court only considered the testimony and exhibits introduced during the magistrate's October 11, 12, and 13, 2017, April 30, 2018, and July 10, 2018 hearings.  The trial court did not consider other evidence that was in the record but was not presented during these hearings.

{¶ 147} Husband has failed to identify any authority that requires the trial court to consider all evidence in the record, even if the evidence was not presented or admitted at trial.  Nor does Husband specify what evidence that the trial court should have, but failed to consider.  *See* App.R. 12; 16.  We decline to construct an argument on Husband's behalf.

{¶ 148} Accordingly, Husband has failed to meet his burden of demonstrating plain error.  Husband's second assignment of error is overruled.

{¶ 149} In his third assignment of error, Husband argues that the trial court erred in limiting the questioning of witnesses to 1 hour on direct-examination and 30 minutes on cross-examination.  As noted above, Husband did not raise a specific objection to the magistrate's decision on this basis.  Furthermore, Husband did not object in open court to the time restrictions imposed by the magistrate.  (Tr. vol. I, p. 10-13.)  Under these circumstances, we find that Husband has waived this issue and has failed to meet his burden of demonstrating plain error.  Husband's third assignment of error is overruled.

{¶ 150} In his 43d assignment of error, Husband argues that magistrate erred in permitting Wife to present various evidence and testimony, over Husband's objections, at trial.  As noted above, Husband did not raise a specific objection to the magistrate's decision on this basis.  Nor does he identify what evidence the magistrate erred in admitting.  *See* App.R. 12; 16.  Husband appears to argue that the unspecified evidence was not properly authenticated or constituted inadmissible hearsay.

{¶ 151} After reviewing the record, Husband appears to be challenging the trial court's admission of Husband's and Wife's tax records from 2013 (plaintiff's exhibit No. 501).  Husband raised three objections pertaining to the exhibit.  He did not, however, object to the evidence on hearsay grounds.

{¶ 152} First, Husband argued that the exhibit had not been disclosed to Husband during discovery.  The trial court overruled this objection, concluding that the exhibit was a joint tax record from the year 2013 that belonged to Husband and Wife.

{¶ 153} Second, Husband objected to Wife's testimony about the abbreviations in the exhibit, arguing that Wife did not prepare the exhibit nor demonstrate that she had knowledge of the abbreviations used therein.  The trial court sustained Husband's objection.

{¶ 154} Third, Husband raised a scope objection to the exhibit, arguing that it did not specify what tax year the records pertained to.  The trial court overruled

this objection on the basis that the document indicated it pertained to the 2013 tax year.

{¶ 155} After reviewing the record, we agree with the trial court's rationale in addressing Husband's objections. Furthermore, Husband has failed to demonstrate that this is an extremely rare case in which exceptional circumstances warranting application of the plain error doctrine exist. Accordingly, Husband's 43d assignment of error is overruled.

### E. Factual Issues

{¶ 156} In his 1st, 4th, 5th, 6th, 8th, 9th, 10th, 11th, 12th, 13th, and 21st assignments of error, Husband challenges various factual determinations made by the trial court. As noted above, Husband waived all but plain error with respect to his fifth and eighth assignments of error by failing to comply with Civ.R. 53, and Husband does not present a plain error argument on appeal.

{¶ 157} In his fifth assignment of error, Husband argues that the trial court erred in establishing grounds for divorce. He appears to argue that he did not stipulate to the fact that he and Wife were incompatible, directing this court to his trial testimony that he wanted to remain married to Wife after the conclusion of trial. Wife testified at trial that she and Husband were incompatible.

{¶ 158} Husband has failed to demonstrate plain error. Accordingly, Husband's fifth assignment of error is overruled.

{¶ 159} In his eighth assignment of error, Husband argues that the trial court erred by finding that Husband concealed financial information from Wife and the

court and attempted to confuse the financial issues present in the divorce proceedings. This finding was made by the magistrate, not the trial court. Furthermore, Wife testified at trial that she disclosed all her assets and liabilities to the court. Wife opined that Husband had not done the same.

{¶ 160} Wife testified that Husband's income was unknown to her. When the magistrate asked Wife about her understanding about Husband's income, Wife testified,

> [w]ell, it's very unknown. That's the problem. I feel like I don't know. I never really know what's going on. There was — it seemed like big dollar amounts coming in that I would hear about big contracts. And then it all wasn't really that available. So I don't really know what his income is. That's one thing I've never really understood.

(Tr. vol. II, p. 52.)

{¶ 161} Based on Wife's testimony and Husband's failure to argue — much less demonstrate — that application of the plain error doctrine is warranted in this case, Husband's eighth assignment of error is overruled.

### 1. Income

### a. Husband's Income

### i. 2014-2015

{¶ 162} In his first assignment of error, Husband argues that the trial court erred in establishing Husband's income and determining that Husband's income was $129,550.

{¶ 163} First, Husband contends that the trial court abused its discretion by disregarding ample evidence of Husband's income. Specifically, Husband argues

that the trial court disregarded "the testimony, tax returns, and financial disclosure statements submitted by [Husband]." Husband's brief at 8-9.

{¶ 164} As an initial matter, Husband's assertion that the trial court disregarded evidence pertaining to his income is entirely unsupported by the record. The record reflects that the trial court considered this information, including specifically Husband's financial disclosure statements in which he asserted that his income was $40,000 (2016) and $20,000 (2017). The trial court concluded, however, that this information was neither credible nor accurate.

{¶ 165} After reviewing the record, we are unable to find that the trial court erred in determining that the evidence presented by Husband was not credible. As noted above, the trial court was in the best position to make credibility determinations. *See Allan*, 8th Dist. Cuyahoga No. 107142, 2019-Ohio-2111, at ¶ 80.

{¶ 166} Husband failed to present any documentary evidence, such as a W-2 or 1099, corroborating the $40,000 or $20,000 figures listed on Husband's financial disclosure statements. In his motion to appoint a receiver, filed in June 2017, Husband alleged that his income would be less than $10,000 that year. Again, Husband failed to support this assertion with credible documentary evidence.

{¶ 167} Second, Husband argues that the trial court erred in determining Husband's income based solely on deposits made into his personal checking account, rather than the evidence submitted by Husband. As noted above, the trial court concluded that the evidence submitted by Husband was not credible. The magistrate explained in its June 11, 2019 decision that Husband, unlike Wife,

"employed every possible measure imaginable to both conceal his financial information from [Wife] and the Court, and confuse the financial issues present in this case." The magistrate further stated that "[Husband's] diversionary tactics and failure to provide credible evidence made it impossible for the Court to determine his true income [since 2014.]"

{¶ 168} Wife testified at trial that Husband's income was unknown to her. As noted above, Wife explained that she never really knew or understood the situation with Husband's income.

{¶ 169} Based on the lack of documentary evidence regarding Husband's income, the magistrate had to calculate Husband's income by examining bank records and deposits made into personal bank accounts. The magistrate concluded that Husband's personal checking account records were "the only *reliable* indication of [Husband's] true income." (Emphasis added.) Magistrate's decision at 26-27.

{¶ 170} The magistrate examined Husband's personal checking deposits for 2014 and 2015, and determined that the average of the personal checking deposits was $129,550.62. The magistrate concluded that it was logical to conclude that the deposits that exceeded Wife's income — which were documented — were attributable to Husband's income.

{¶ 171} The trial court determined that "[a]bsent any other documents to verify or substantiate [Husband's] income, the two-year average for deposited funds into [Husband's] personal checking account is likely the most accurate determination of his income for the purposes of computing child support."

{¶ 172} The trial court concluded that the evidence supported the magistrate's finding that Husband's income was $129,550.62. The deposits made into the Chase Bank checking account exceeded Wife's documented income. The trial court concluded that it was "logical to conclude that the unexplained amounts, over and above [Wife's] income, is [Husband's] income. Those amounts average $129,550.62 per year over a two-year period [between 2014 and 2015]."

{¶ 173} Husband argues that the trial court failed to deduct deposits that were made by Wife and other deposits, such as refunds, reversed bank fees, and reimbursements for work-related purchases, in determining Husband's income. Husband's argument is misplaced.

{¶ 174} The Chase Bank checking account based upon which the magistrate and trial court determined Husband's income was Husband's personal checking account. In his supplemental objections to the magistrate's decision, Husband acknowledged that he used the Chase Bank personal checking account for both business and personal income and expenses. This account is in Husband's name only — Wife is not listed on the account. Wife testified at trial that between 2010 and 2014, she "signed [her] checks over to [Husband]." (Tr. vol. II, p. 119.) Wife did not deposit the checks into the account herself, and she did not have a bank account in her own name. Wife opened an account in her name with Huntington Bank in 2015.

{¶ 175} The exhibits submitted by Wife supported the magistrate's and the trial court's determination of Husband's income. In fact, based on the evidence

presented regarding the parties' delinquent taxes, Husband's income may have even exceeded the $129,550.62 figure computed by the magistrate.

{¶ 176} We note that the invited error doctrine arguably applies in this case. "Under the invited error doctrine, a party may not take advantage of an alleged error that the party induced or invited the trial court to make." *Yuse*, 8th Dist. Cuyahoga No. 89213, 2007-Ohio-6198, at ¶ 14, citing *Woodruff*, 10 Ohio App.3d at 327, 462 N.E.2d 457.

{¶ 177} Here, any error that the magistrate or trial court made in determining Husband's income was, in part, induced by Husband's diversionary tactics, attempts to confuse the financial issues involved in the divorce proceedings, and failure to provide credible documentation regarding his income. Accordingly, in this appeal, Husband cannot take advantage of the purported errors in determining his income that he, in part, induced.

{¶ 178} For all of the foregoing reasons, Husband's first assignment of error is overruled.

### ii. 2016-2017

{¶ 179} In his 11th assignment of error, Husband argues that the trial court erred in finding Husband did not provide any credible evidence of his true and accurate income for the years 2016 and 2017.

{¶ 180} Although Husband cites to information in the record regarding his income and financial situation, he fails to argue, much less demonstrate, that the trial court erred in determining that the evidence submitted by Husband was not

credible. The record further reflects that Husband failed to produce his personal tax return for 2016 or Bradley Metal Fabrication's corporate tax return for 2016.

{¶ 181} For all of these reasons, Husband's 11th assignment of error is overruled.

### b. Wife's Income

{¶ 182} In his fourth assignment of error, Husband argues that the trial court erred in establishing Wife's income. Husband contends that the trial court erred in determining that Wife's income was $91,000 because Wife's Howard Hanna compensation package demonstrates that her income is $112,000. Husband further suggests that Wife's income should have been calculated at $180,000 based on Wife's testimony that she earned $90,000 in the six months prior to filing for divorce, and as such, this is Wife's earning potential.

{¶ 183} Wife testified that she worked as a real estate agent and an office manager. Wife's income was documented in the trial court. Wife produced joint tax returns for 2014 and 2015, her separate tax return for 2016. Wife's 2016 income tax return demonstrated she had $96,261 in gross earnings. Wife submitted her 2017 Howard Hanna income package. The Howard Hanna income package identified Wife's annual base salary as $45,000 in 2016 and 2017. Wife testified about the income package, and the magistrate concluded that Wife's testimony was credible. Based on the evidence submitted by Wife and Wife's testimony with respect to her income, the magistrate determined that Wife's income was $91,261.

{¶ 184} In his objections to the magistrate's decision, Husband argued that the magistrate failed to consider the following factors in determining Wife's income: (1) Wife is voluntarily underemployed (Husband alleged Wife made $90,000 in the six months leading up to filing for divorce and then immediately upon filing for divorce, she took a salaried job that reduced her income by 50 percent ($45,000), (2) Wife's potential earning power ($90,000 in the six months before filing divorce, and thus $180,000 per year), (3) additional compensation, income, and bonuses Wife receives under her Howard Hanna package, and (4) Wife failed to disclose her revenue stream from the "Bradley Group" real estate business.

{¶ 185} In overruling Husband's second objection, the trial court found that Wife was not voluntarily underemployed. Wife testified that her income was neither guaranteed nor predictable as real estate agent. She was an independent contractor working on straight commission, and she did not receive benefits. On the other hand, as a real estate office manager, Wife earns a base salary of $45,000, and she also receives health insurance for herself and the minor child, and retirement benefits. Wife is additionally eligible for profit sharing, commissions for referrals, and bonuses. Her guaranteed income as an office manager is $45,000 and her potential income is $112,000.

{¶ 186} In his tenth objection, Husband argued that Wife continues to receive income from the Bradley Group and that the magistrate failed to consider this additional income in determining Wife's annual income. Husband also alleged that Wife transferred the real estate business and its assets to a third party during

the divorce proceedings. A review of Wife's trial testimony completely contradicts Husband's assertion that she continues to receive income from the Bradley Group. Wife testified that she encouraged a third party to enter the real estate business and that they occasionally shared leads, gave referrals, and split commissions.

{¶ 187} For all of the foregoing reasons, the trial court did not err in determining Wife's income and Husband's fourth assignment of error is overruled.

### c. Combined Income

{¶ 188} In his 21st assignment of error, Husband argues that the trial court erred in determining that the combined income of the parties exceeded $150,000. Citing the parties' joint income tax returns for 2014 and 2015, which Wife presented at trial, Husband asserts that he and Wife did not claim a combined income in excess of $100,000. Husband argues that "the [trial court] cannot have it both ways. Either [Wife's] income is substantially understated or the combined income of the parties is under $150,000." Husband's brief at 30.

{¶ 189} Husband appears to contend that the parties' joint tax returns for 2014 and 2015, which Wife submitted at trial, show that Husband's and Wife's combined income for both years was $109,155.

{¶ 190} Husband's 21st assignment of error is premised entirely on his first (arguing that the trial court erred in determining Husband's income) and fourth (arguing that the trial court erred in determining Wife's income) assignments of error. As noted above, Husband failed to meet his burden of demonstrating error with respect to either issue. Based on our resolution of Husband's first and fourth

assignments of error, Husband's 21st assignment of error necessarily fails. Accordingly, Husband's 21st assignment of error is overruled.

## 2. Child Support

{¶ 191} In his 13th assignment of error, Husband argues that the trial court erred in calculating child support. This assignment of error corresponds with Husband's second objection to the magistrate's decision. Husband's argument is premised entirely on his assertion that the trial court erred in determining his income. Husband disputes the determination that his income was $129,550.62, alleging that his income in 2016 was $40,000 and his income in 2017 was $20,000. Based on our resolution of Husband's first assignment of error, Husband's 13th assignment of error necessarily fails. Husband's 13th assignment of error is overruled.

## 3. Support Arrearage

{¶ 192} In his sixth assignment of error, Husband argues that the trial court erred in establishing that no support arrearage existed as of July 10, 2018. He fails to identify the amount of arrearage that was allegedly outstanding. Husband argues that Wife testified that she was not fulfilling her obligations under the trial court's temporary support orders issued on September 28, 2016, and October 17, 2017. As a result, Husband appears to contend that Wife should be held in contempt of court.

{¶ 193} The record reflects that a temporary support order was issued in September 2016, requiring the parties to pay expenses related to the marital home,

the minor child's tuition, and the child's healthcare expenses. The trial court modified the temporary support order in October 2017.

{¶ 194} Husband's argument is entirely unsupported by the record. In overruling Husband's eighth objection to the magistrate's decision, the trial court concluded that "[Husband] did not present any evidence to support his argument or show the existence of a temporary support arrearage."

{¶ 195} Wife testified at trial about the trial court's temporary support order. Her understanding of the trial court's March 7, 2017 order, in which the court ordered the September 2016 temporary support order to remain in effect, was that she and Husband would split the cost of expenses related to the marital residence, healthcare expenses, and expenses pertaining to the minor child, including her tuition. Wife testified that she advanced monies pursuant to this order. Although the parties were ordered to split these expenses equally, Wife testified that Husband did not reimburse her for the advancement she made.

{¶ 196} Based on the foregoing, the record does not reflect a temporary support arrearage and Husband's sixth assignment of error is overruled.

{¶ 197} In his 12th assignment of error, Husband argues that the trial court erred in determining that no evidence of child support arrearage was presented at trial. Husband's argument reads, in its entirety, "[i]n the interest of time and space I would like to incorporate by reference[.]" Husband's brief at 23. We decline to construct an argument on Husband's behalf. *See* App.R. 12; 16. Husband's 12th assignment of error is overruled.

## 4. Parenting Time

{¶ 198} In his ninth assignment of error, Husband appears to argue that the magistrate erred in determining that Wife had not denied him parenting time. Husband contends that he presented "overwhelming facts" and a "mountain of evidence" that demonstrated Wife denied him parenting time before and during the divorce proceedings. Based on this evidence, Husband appears to argue that Wife should be held in contempt of court.

{¶ 199} Husband does not challenge the magistrate's recommendation that Wife be designated as the minor child's residential parent and legal custodian, or the trial court's judgment adopting the magistrate's decision in this regard. Nor did Husband object to this designation in his seventh objection to the magistrate's decision in which he argued that the magistrate erred in determining parenting time.

{¶ 200} Rather, Husband challenges the magistrate's finding under R.C. 3109.04, governing the allocation of parental rights and responsibilities for the care of children and shared parenting. Specifically, Husband challenges the magistrate's finding under R.C. 3109.04(F)(1)(i), which provides, in relevant part,

> "[i]n determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including * * * [w]hether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court[.]"

Husband's argument is misplaced.

{¶ 201} A trial court is required to consider the factors set forth in R.C. 3109.04(F) regarding allocating parenting time in order to determine the best interest of the child. *In re E.B.*, 2020-Ohio-4139, 157 N.E.3d 826, ¶ 78 (8th Dist.). In this case, the magistrate fulfilled its requirement. The magistrate specifically considered the factor set forth in R.C. 3109.04(F)(1)(i) and concluded that it was not applicable.

{¶ 202} Assuming, arguendo, that the magistrate erred in determining that Wife did not deny Husband parenting time, as Husband contends, the trial court has broad discretion in making a best-interest determination. *In re E.O.T.*, 8th Dist. Cuyahoga No. 107328, 2019-Ohio-352, ¶ 39. This court will not disturb the trial court's judgment absent an abuse of that discretion. *Id.*; *In re J.W.*, 8th Dist. Cuyahoga No. 105337, 2017-Ohio-8486, ¶ 19 ("[A] trial court's judgment regarding the allocation of parental rights and responsibilities will not be disturbed absent an abuse of discretion.").

{¶ 203} In the instant matter, the magistrate's recommendation that it was in the best interest of the minor child to designate Wife as the residential parent and legal custodian, and the trial court's adoption of that recommendation, were consistent with and supported by the recommendations of the GAL and Dr. Steven Neuhaus, the clinical psychologist that conducted an evaluation to assist the court in allocating parental rights and responsibilities.

{¶ 204} For all of the foregoing reasons, Husband's ninth assignment of error is overruled.

{¶ 205} In his tenth assignment of error, Husband argues that the trial court erred in finding that no probative evidence was presented to prove that either parent has ever denied the other any parenting time. Husband's assignment of error is a statement, not an argument. Husband does not identify what probative evidence was presented to the trial court. He merely directs this court to "see above facts referenced above." It is not this court's duty to construct an argument on Husband's behalf. Husband's tenth assignment of error is overruled.

### III. Conclusion

{¶ 206} After thoroughly reviewing the record, we find no basis upon which to conclude that the trial court's judgment ruling on Husband's objections and adopting the magistrate's decision as modified in the trial court's June 17, 2020 judgment entry of divorce was unreasonable, arbitrary, or unconscionable. Furthermore, we find no basis upon which to conclude that the trial court committed plain error. Husband has failed to demonstrate that this is an "extremely rare case" in which exceptional circumstances exist warranting application of the plain error doctrine in order to prevent a manifest miscarriage of justice. *See Goldfuss*, 79 Ohio St.3d at 121, 679 N.E.2d 1099.

{¶ 207} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

LARRY A. JONES, SR., P.J., and
LISA B. FORBES, J., CONCUR